513 So.2d 798 (1987)
Freddie Joe STILLER, Jeannie Stiller, Hubert Stiller and Verdie May Stiller, Appellants,
v.
MARINER CAY PROPERTY OWNERS ASSOCIATION, INC., Appellee.
No. 87-1560.
District Court of Appeal of Florida, Fourth District.
October 14, 1987.
James F. Littman of James F. Littman, P.A., Stuart, for appellants.
Leif J. Grazi of Grazi & Gianino, Stuart, for appellee.
PER CURIAM.
In our opinion the trial court committed reversible error in granting the temporary injunction which is the subject of this appeal. We say this because necessary predicates were not established.
It was not shown that (1) appellee would suffer irreparable harm, Hiles v. Auto Bahn Federation, Inc., 498 So.2d 997 (Fla. 4th DCA 1986); (2) appellee has an inadequate remedy at law, Stading v. Equilease Corp., 471 So.2d 1379 (Fla. 4th DCA 1985); (3) appellee has a clear legal right to the relief requested, Playpen South, Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981); nor that (4) a temporary injunction will serve the public interest. Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980).
REVERSED.
HERSEY, C.J., and WALDEN, J., concur.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
In my opinion, the trial court did not abuse its discretion in entering a temporary injunction here to preserve the status quo; and a reversal is inappropriate, when, as here, the transcripts are incomplete in both appendices.
I conclude the following facts have been established for the purpose of our review:
1. The Stillers sold part of their residential property, but recorded an east-west easement, alongside what is now Whiticar Way, from the property they did not sell to *799 St. Lucie Boulevard, a meandering thoroughfare west of the Manatee Pocket in Stuart.
2. The Mariner Cay Property Owners Association, without objection from the Stillers, fenced the west side of the development and planted it, including the Stillers' 30 foot easement.
3. With the verbal consent of the Association, the Stillers used the same roads in the development as the lot purchasers did to get to and from St. Lucie Boulevard, from the time of development to the present.
4. From the plat in the appendix, the entrance to the development from St. Lucie Boulevard appears to be a little more than 150 feet from the entrance that would be created for the Stillers, were they able to replace the chain link fence and plantings with a road along their easement.
5. The Stillers' present attempts to use their easement may or may not bear a relation to the litigation between them and a lender in another action, in which there may or may not be questions of encroachment upon and the creation or abandonment of the easement. There is no evidence to confirm the existence or nonexistence of any of these possibilities. Only pleadings alleging the existence of the foregoing are in the appendices.
6. The Stillers in mid-April 1987 attempted to bulldoze the easement in assertion of their rights to same, including removal of the fence that crossed the easement, and of plantings there.
7. The temporary injunction which finally issued after notice  and which the court is reversing  maintained the status quo by prohibiting the Stillers from proceeding at that time.
8. The Association seeks a permanent injunction, requiring the Stillers to use the development thoroughfares, and alleges the creation of a traffic hazard by the Stillers' proposed road, which may or may not be related to the shortness of the distance from the existing entrance, as well as security problems occasioned by the Stillers' use of the easement.
Resolution of the competing tensions between property owners' vested rights to use their duly recorded easements and the alleged problems occasioned their neighbors and the general public by their present attempt to use it after years of acquiescence in the non-use and changes in the area during those years justify due deliberation and ordering temporary relief.
Before we reverse the actions of a trial court after "general quarters" has been sounded, I believe that restraint should be exercised; and there should be compelling reasons for this court to interfere, particularly when the Association can be rendered accountable for all damages occasioned by its achieving maintenance of the status quo against the will of the property owners with vested rights.
As for the majority's list of necessary conditions for grant of such an injunction, the Supreme Court's three item list for a temporary mandatory injunction, in Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1985), which mentioned a fourth consideration that applies only in certain circumstances, somehow got enlarged for all cases in a prohibitory situation in Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980). One can clearly see that the public interest is not involved in every injunction action; nor did the Supreme Court say it was. Ironically, because of the alleged traffic hazard here, the public's interest could be affected, which the majority opinion fails to explain away.
In brief, I feel that disruption of the status quo in this case could have been reasonably viewed by the trial court to have a substantial downside and an iffy upside. Maintenance of the status quo could reasonably have been viewed as just the reverse. In my view, given the incomplete transcripts, there are indicia to support a trial court's preliminary decision on facts which indicate no adequate remedy but irreparable harm without injunction during "general quarters."
Having said all of the foregoing, I have difficulty, preliminarily, perceiving on this incomplete record how the Association *800 could prevail ultimately, in the absence of some substantial proof of a traffic hazard and application of estoppel against the owners of vested property rights. Surely, the Association could not prevail against such property owners on a theory that "what is mine is mine; and what is yours is mine." I am sure the property owners view the Association's conduct  perhaps with very good reason ____ as implementing that very theory. Moreover, they are not precluded from seeking preliminary relief again, nor from offering to do equity, assuming years of acquiescence, by allowing for transition to achieve continuity of security and traffic control, in place of unilateral hardball tossed up by a bulldozer.