751 So.2d 767 (2000)
ANICH INDUSTRIES, INC., Appellant,
v.
Deanna RANEY, Mark G. Olsen & Olsen Industrial Sales, Inc., Appellees.
No. 5D98-2821.
District Court of Appeal of Florida, Fifth District.
March 3, 2000.
*768 Russell W. LaPeer of Landt, Wiechens, LaPeer & Ayres, Ocala, for Appellant.
Jay G. Sherwin of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for Appellees.
THOMPSON, J.
Appellant, Anich Industries, Inc. (Anich), appeals an order below denying its request for the entry of an order enjoining Appellee, Deanna Raney (Raney), from violating the terms of the non-compete agreement she had signed with Anich. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B). We affirm.

Facts
Anich is an industrial tool and equipment supplier in the Central Florida area. Anich hired Raney as a sales person on February 9, 1998. Three days after she began her employment, Raney signed an employment contract, containing a noncompete clause, that had been prepared by Anich.[1] On May 11, 1998, less than three months after she had signed the employment contract, Raney delivered to Anich her letter of resignation. Although the letter stated Raney would "be available" through May 28, her last day of employment was May 14 and she received her last paycheck on May 15. She then accepted a position with Mark G. Olsen and Olsen Industrial Sales, Inc., an Anich competitor.
In July 1998, Anich filed a complaint against Raney, Mark G. Olsen and Olsen Industrial Sales, seeking injunctive relief, temporarily and permanently, as well as damages, based on Raney's alleged breach of her employment contract and its covenant *769 not to compete, conspiracy to break the covenant, illegal use of trade secrets, and interference and conspiracy to interfere with contract and advantageous business relations. Anich filed a motion for temporary injunction which was supported by affidavits and a memorandum of law. The circuit court held an evidentiary hearing on the motion for temporary injunction on August 28, 1998.
Anich presented testimony from three witnesses who had previously purchased tools and equipment from Anich through Raney. These witnesses, the first of whom was an employee of Turbine Broach Company of Citrus County, the others employees of Ocala Fabrication and Repair of Marion County, testified that Raney had sold them equipment on behalf of Olsen shortly after her employment with Anich ended. Jimmie Richardson of Ocala Fabrication and Repair testified that she had sold him a tool on behalf of Olsen while still employed by Anich. Each of these witnesses, however, conceded on cross-examination that they did not have an exclusive relationship with Anich and they purchased tools and equipment from whomever could most quickly and cheaply supply the necessary equipment.
Mary Anich, the President and Founder of Anich, testified that Raney was familiar with Anich's customers, their needs, Anich's pricing information and costs. Ms. Anich testified that Raney failed to return written materials that belonged to Anich, and that she knew Raney had solicited customers of Anich's because she had seen Olsen business cards at her customers' places of business.
A former employee of Anich's, Steve Earnst, testified on behalf of Raney. Having been in the business for twenty years, he testified that there was no special training, trade secrets, or "inside information" involved in being a sales person in the industrial tool and supply business. The only confidential information, from his point of view, was the cost to Anich in securing industrial tools and supplies to later sell.
Raney testified that she did not have the authority to set prices for her sales, and that she did not know the costs to Anich of the tools and supplies she was selling. She received little training, did not learn any trade secrets, and had not kept any of Anich's documents. Although she conceded selling Jimmie Richardson a tool on behalf of Olsen while still employed by Anich, she pointed out that Olsen had a special discount on that tool and Anich would have benefitted from the sale because Anich would get the "repeat insert business" that would be necessary to maintain that tool.
At the conclusion of the hearing, the trial judge orally enjoined Raney from revealing trade secrets"if she has any." He also orally enjoined her from doing business with Turbine Broach and Ocala Fabrication and Repair. Two weeks after the hearing, the trial court entered an order denying Anich's motion for temporary injunction without explaining the reasoning behind that decision.

Standard of Review
A trial court's ruling on whether to enter a temporary injunction is subject to abuse of discretion review. See Wise v. Schmidek, 649 So.2d 336, 337 (Fla. 3d DCA 1995). As the Fourth District has stated:
A trial court's ruling on a temporary injunction comes to the appellate court with a presumption of correctness, reversible only upon a showing of a clear abuse of discretion. A temporary injunction does not decide the merits of a case; no full hearing has been conducted. To rule on a temporary injunction, the trial court must, early in the case, estimate the likelihood of the Plaintiff prevailing on the merits and securing a permanent injunction. These are some of the reasons that a party appealing the denial of a temporary injunction has the heavy burden of demonstrating that the trial court's ruling was clearly improper. *770 Gold Coast Chemical Corp. v. Goldberg, 668 So.2d 326, 327 (Fla. 4th DCA 1996).

Application of Law to Facts
A party seeking the entry of a preliminary injunction must demonstrate: i) irreparable harm; ii) a substantial likelihood of success stemming from a demonstrably clear legal right; iii) an inadequate remedy at law; and, in some situations iv) consideration of the public interest. See Wilson v. Sandstrom, 317 So.2d 732, 736 (Fla.1975), cert. denied, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976); City of Oviedo v. Alafaya Utilities, Inc., 704 So.2d 206 (Fla. 5th DCA 1998); Miami-Dade County v. Church & Tower, Inc., 715 So.2d 1084, 1087 (Fla. 3d DCA 1998); St. Lucie County v. St. Lucie Village, 603 So.2d 1289, 1292 (Fla. 4th DCA), rev. denied, 613 So.2d 12 (Fla.1992). Both parties acknowledge that this case is governed by Section 542.335, Florida Statutes (1997).[2] Anich did not demonstrate the existence of a legitimate business interest in need of protection below. As such, Anich failed to demonstrate a substantial likelihood of success stemming from a demonstrably clear legal right, and was not entitled to the entry of an injunction in Anich's favor.
Anich proposes that it established several legitimate business interests: i) that Raney possessed trade secrets of Anich; ii) that Raney had learned valuable confidential information that were not trade secrets but were a legitimate business interest; and iii) that there were substantial relationships with specific customers derived from her work for Anich that Raney sought to use to her advantage in her new position. That is not the case. As for the first two of these interests, trade secrets or valuable confidential information possessed by Raney, the trial court was evidently not convinced that these were proven[3] and neither are we. Raney's *771 knowledge of Anich's costs, profits, and pricing structure was disputed. Her knowledge of Anich's active customers, their purchasing history and needs and specifications also was disputed and Raney presented testimony that Anich's customers would be commonly known. See Keel v. Quality Medical Systems, Inc., 515 So.2d 337 (Fla. 3d DCA 1987)(information commonly known in the industry and not unique to allegedly injured party not "confidential" and thus not entitled to protection); Blackstone v. Dade City Osteopathic Clinic, 511 So.2d 1050 (Fla. 2d DCA 1987)(customer lists which can be compiled from readily accessible sources not protected).
Anich's contention that it proved that Raney sought to take advantage of substantial relationships with specific customers also is unsupported by the record from the hearing. Anich asserts that the "substantial relationships" contemplated in the statute are the relationships between the employer and the customer; Raney, on the other hand, submits that the "substantial relationships" are those developed between the employee and the customer. See Bradley v. Health Coalition, Inc., 687 So.2d 329, 334-35 (Fla. 3d DCA 1997) ("[t]he purpose of the statutory provision is to prevent an employee from taking advantage of a customer relationship which was developed during the term of the employee's employment"); see also John A. Grant & Thomas T. Steele, Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century, 70 Fla. Bar. J. 53, 54 (1996).
Under either interpretation, however, "substantial relationships" have not been shown. The customers who testified on Anich's behalf all acknowledged that they made their industrial tool and equipment purchases based primarily on cost and the supplier's ability to provide the goods quickly. There was little evidence of any exclusive or other kind of relationship that could be construed as "substantial" within the meaning of the statute. Alternatively, under Raney's interpretation, it is obvious that in less than three months with Anich she did not have the opportunity to develop a "substantial relationship" with any of her customers.
Since "all covenants not to compete... must be founded on an interest, determined by law, to be the proper subject of protection," Kephart v. Hair Returns, Inc., 685 So.2d 959, 960 (Fla. 4th DCA 1996), rev. denied, 695 So.2d 699 (Fla.1997), the trial court was correct to not grant a temporary injunction in favor of Appellant. Anich did not demonstrate the existence of any legitimate business interests in need of protection. Kephart, 685 So.2d at 960 ("the proof of a protectable interest is the threshold to enforcement of such covenants").
AFFIRMED.
COBB and HARRIS, JJ., concur.
NOTES
[1] The pertinent portion of the employment contract reads:

For a period of TWO (2) years commencing after the date of termination of his/her employment with the Corporations, the Employee shall not, within ONE HUNDRED FIFTY (150) miles of the geographical boundaries of Marion County, Florida, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be a director, stockholder, partner or employee, or consultant to, any business, firm, partnership, venture, corporation or other entity which is conducting any business which competes with the business of either of the Corporations as conducted on the date hereof and all other business conducted by either of the corporations, its affiliates, subsidiaries or successors, at any time during the term of this employment relationship. The parties recognize that the business of the Corporations are highly competitive in the above designated areas. It is the well-considered intent of the parties that this covenant not to compete be given the broadest lawful and enforceable scope permissible for the protection of the business interests and good will of the Corporations.
The Employee agrees that for a period of TWO (2) years after the date of termination of his/her employment with the Corporations, he/she will not, on behalf of himself/herself or on behalf of any other person, firm, partnership, venture, corporation or other entity, call on any of the customers of either of the Corporations, its affiliates, subsidiaries or successors, for the purposes of soliciting and/or providing to any of said customers, the products and/or the services which are similar to the products and/or services of either of the Corporations, its affiliates, subsidiaries or successors, nor will the Employee in any way directly or indirectly, for himself/herself, or on behalf of any other person, firm, partnership, venture or corporation, solicit, divert or take away any customer of either of the Corporations. The term "customer of either of the Corporations" shall be deemed to include for the purposes hereof any past or present customer of either of the Corporations, its affiliates, subsidiaries or successors, and third parties which either of the Corporations were actively soliciting to be a customer during the THREE (3) year period immediately preceding the date of the termination of the Employee's employment.
[2] That statute provides in pertinent part:

[E]nforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:
(a) A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.
(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b. A specific geographic location; or
c. A specific marketing or trade area.
5. Extraordinary or specialized training.
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.
(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.
§ 542.335(1)(a)-(c), Fla. Stat. (1997).
[3] On this point, the trial judge stated:

I've had several other cases under this statute in the past and I know you have to havethey made it easierthe legislature has the intent to enforce these covenants so long as it's reasonably necessary to protect these business interests and trade secrets, and of course if shepart of the injunctiontemporarily I am going to enter is, if she has any trade secrets orshould prohibit her from disclosing those [sic]. I don't know if she has any. [emphasis supplied]