34 So.3d 24 (2010)
BISCAYNE PARK, LLC, Appellant,
v.
WAL-MART STORES EASt, LP, Appellee.
No. 3D08-3219.
District Court of Appeal of Florida, Third District.
February 17, 2010.
Rehearing and Rehearing En Banc Denied May 18, 2010.
*25 Peckar & Abramson and Ralf R. Rodriguez, Ft. Lauderdale, for appellant.
Akerman Senterfitt and Dana A. Clayton and Nancy A. Copperthwaite and Samantha J. Kavanaugh, Clayton, for appellee.
Before GERSTEN and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, Judge.
Biscayne Park, LLC, ("Biscayne") appeals from an order granting Wal-Mart Stores East, LP's, ("Wal-Mart") verified motion for temporary injunction. Because we find that the prerequisites for the issuance of a temporary injunction were not established below, we reverse the December 15, 2008 order.[1]

I. FACTUAL AND PROCEDURAL HISTORY

Biscayne is the owner of a sixteen acre tract of land located in the Village of El Portal (the "property"). Biscayne purchased the property at a public auction without knowledge that the property had previously sustained widespread environmental impact.
In March 2007, Wal-Mart began negotiations with Biscayne to purchase the property. The parties entered into a purchase agreement that permitted Wal-Mart to conduct due diligence inspections on the property and to terminate the agreement prior to closing if, as a result of the inspections, Wal-Mart did not wish to purchase the property. As part of the inspections, Wal-Mart installed ground water monitoring wells on the property.
In October, 2007, Wal-Mart terminated the purchase agreement. The wells, however, remained on the property. Biscayne subsequently began negotiations with another potential buyer, Interra Development Corporation ("Interra"). As a result of the negotiations, Biscayne agreed to permit Interra to use the wells on the property to conduct its own due diligence. Wal-Mart, however, became concerned about its potential liability resulting from this use of the wells that it had previously installed. As a result, Wal-Mart commenced negotiations with Biscayne regarding an indemnification and release agreement, and proposed that Biscayne pay for Wal-Mart's costs related to the installation *26 of the wells. Biscayne rejected Wal-Mart's proposal, and informed Wal-Mart that it considered the wells permanent fixtures attached to the property that belonged to Biscayne.
In November 2008, Wal-Mart filed a complaint against Biscayne for declaratory and injunctive relief, and a verified motion for temporary injunction. Wal-Mart's verified motion requested an order allowing entry onto the property for the purpose of filling and capping the wells. At the time, Biscayne was using the wells in its effort to remediate the property as required by a local environmental regulatory agency.
On December 15, 2008, the trial court entered an order granting Wal-Mart's motion for a temporary injunction. The trial court gave Biscayne two options: 1) allow Wal-Mart to "abandon and seal" the wells; or 2) purchase a six-month insurance policy insuring Wal-Mart with respect to the wells in the amount of $20,000,000. Biscayne filed a motion for reconsideration, which the trial court denied, and this appeal ensued. Wal-Mart subsequently posted a $230,000 bond and, during the week of January 12, 2009, entered the property and sealed the wells.

II. ANALYSIS

On appeal, Biscayne asserts that the trial court erred in issuing the temporary injunction.[2] We agree. "The standard for determining whether an injunction was wrongfully issued is simply whether the petitioning party was unentitled to injunctive relief." Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018, 1021-22 (Fla.1989). The well-established requirements for the issuance of a temporary injunction are: (1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and, (4) the entry of the injunction will not disserve the public interest. See Angelino v. Santa Barbara Enters., LLC, 2 So.3d 1100 (Fla. 3d DCA 2009); Miami-Dade County v. Fernandez, 905 So.2d 213 (Fla. 3d DCA 2005). Moreover, a temporary injunction "should be granted only sparingly and only after the moving party has alleged and proved facts entitling it to relief." Morgan v. Herff Jones, Inc., 883 So.2d 309, 313 (Fla. 2d DCA 2004).
With respect to the first requirement, Wal-Mart has not demonstrated irreparable injury, and the unavailability of an adequate remedy at law. A review of the proceedings below demonstrates that Wal-Mart's alleged injury was its possible monetary liability resulting from possible future contamination to groundwater through the wells. "[T]his court has previously held that the granting of injunctive relief is improper when a plaintiff's right to recover is based upon a future event," Oxford Int'l Bank & Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54, 56 (Fla. 3d DCA 1979); in this case, the future event is the possible future contamination of the groundwater through the wells. Because the alleged injury is speculative, we conclude that it is insufficient to meet the irreparable injury standard. See Jacksonville Elec. Auth. v. Beemik Builders & Constructors, Inc., 487 So.2d 372, 373 (Fla. 1st DCA 1986) ("Irreparable injury will never be found where the injury complained of is `doubtful, eventual, or contingent.'" (quoting First Nat'l Bank in St. Petersburg v. Ferris, 156 *27 So.2d 421, 424 (Fla. 2d DCA 1963))). Additionally, in the event that such an alleged event were to occur, Wal-Mart would have an adequate remedy at law, i.e., a claim for money damages. See Bacardi U.S.A., Inc. v. Gallo Wine Distribs., LLC, 829 So.2d 963, 964 (Fla. 3d DCA 2002). Because we conclude that Wal-Mart failed to satisfy the first requirement for the issuance of an injunction, it is unnecessary for us to comment on the remaining requirements.
Accordingly, for the reasons stated, we conclude that the trial court erred in issuing the injunction, and reverse the December 15, 2008 order entered below. Moreover, because the wells on Biscayne's property were destroyed following the entry of an improper injunction, on remand Biscayne can proceed against Wal-Mart's posted bond on its claim for damages. See Jefferies & Co. v. Int'l Assets Holding Corp., 830 So.2d 256 (Fla. 5th DCA 2002); Shea v. Cent. Diagnostic Servs., Inc., 552 So.2d 344 (Fla. 5th DCA 1989).
Reversed and remanded.
SCHWARTZ, Senior Judge (specially concurring).
A preliminary injunction must be based on four indispensable elements. See Wilson v. Sandstrom, 317 So.2d 732, 736 (Fla. 1975). In my opinion, the one in this case is supported by none of them. Apart from that, it's fine.
GERSTEN, J. (dissenting).
I respectfully dissent for two reasons. First, Wal-Mart Stores East, LP ("Wal-Mart") satisfied the requirements for the temporary injunction. Second, the temporary injunction is now moot. Therefore, I would affirm.
This controversy arose out of a failed contract to purchase land. Wal-Mart contracted to purchase land used as a trailer park from Biscayne Park, LLC ("Biscayne"). The contract permitted Wal-Mart to conduct a due diligence inspection on the land and to terminate the contract prior to closing if, after due diligence, Wal-Mart did not want to purchase the land.
Before closing on this contract, Wal-Mart engaged in its due diligence. Part of this due diligence was to drill monitoring wells to test the groundwater for possible contamination. Wal-Mart installed and paid for these monitoring wells. After eight months of sampling the groundwater, Wal-Mart determined that the groundwater and soil had widespread contamination. Therefore, pursuant to the contract's terms, Wal-Mart backed out of the contract.
After backing out of the contract, Wal-Mart notified Biscayne that it planned to abandon and discontinue the use of the monitoring wells, which if left unsealed are a safety or environmental hazard. Sealing the monitoring wells was the final part of due diligence and was required under Florida and local laws. See § 62.770.200(31), (41), Fla. Adm.Code (2006). Therefore, Wal-Mart requested access to the land to seal the abandoned monitoring wells, but Biscayne refused and instead continued to use Wal-Mart's monitoring wells for groundwater sampling.
Thereafter, Wal-Mart sought this temporary injunction to seal the abandoned monitoring wells. The trial court granted the temporary injunction to seal the abandoned monitoring wells and return the land to status quo before the contract. This appeal followed.
The trial court did not abuse its discretion in granting the temporary injunction because the requirements for issuing one were satisfied. Trial courts have wide discretion in granting or denying a temporary injunction, and appellate courts will not interfere with the exercise of such discretion unless the party challenging the grant or denial clearly shows an abuse of discretion. *28 See Briceño v. Bryden Invest., Ltd., 973 So.2d 614, 616 (Fla. 3d DCA 2008).
Applying the abuse of discretion standard, there are four well-established requirements for issuing a temporary injunction: (1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) the entry of the injunction will not disserve the public interest. See LaRose v. A.K., 32 So.3d 77 (Fla. 2d DCA 2009).
On the first requirement, Wal-Mart demonstrated irreparable injury because third parties' use of the open wells would exacerbate groundwater contamination of the land, making Wal-Mart liable for past and future contamination. Wal-Mart also demonstrated the unavailability of an adequate remedy at law because money does not compensate for contamination and spoliation of our natural resources. I note that this contamination adversely affects everyone in our community and our future generation's children and children's children.
Next, Wal-Mart established its likelihood of success on the merits because the open, unsealed monitoring wells are permanent fixtures that are outside Wal-Mart's control unless they are closed and sealed. See Sears Roebuck & Co. v. Bay Bank & Trust Co., 537 So.2d 1041 (Fla. 1st DCA 1989). Further, and amazingly, the threatened land contamination injury outweighs any possible harm to Biscayne in allowing Wal-Mart back onto the land to seal the monitoring wells.
Finally, and perhaps paramount, the temporary injunction serves the public interest. The injunction serves the public interest because it prevents further contamination through the monitoring wells.
Therefore, the trial court properly and responsibly granted the temporary injunction on legal, apparent environmental concerns. The trial court was well within its discretion in protecting Wal-Mart from liability for the environmental damage. Moreover, the trial court acted responsibly to protect against further damage to our over-indulged, over-taxed, and under-protected environment. In fact, I feel that a reversal in these circumstances is a slap in the face to a hardworking trial judge who was only doing his job ... well.
Further, the need for the temporary injunction is no longer present. In January 2009, pursuant to the temporary injunction, Wal-Mart entered the property and sealed the monitoring wells. Thus, the need for the temporary injunction is moot because the parties are returned to the status quo ante-contract.
Accordingly, because Wal-Mart satisfied the requirements for the temporary injunction and the issue is now moot, I respectfully dissent. On an end note, I regret the expenditure of paper resources used in the writing of both the majority and dissent, but reiterate that I would affirm the order granting Wal-Mart's verified motion for temporary injunction.
NOTES
[1] We do not address the remaining points raised on appeal.
[2] This Court notes that the issuance of the "temporary" injunction was in fact in effect a "permanent" injunction as the wells were permanently sealed.